The Rochester City Bank and Lester, agt. Suydam and others.

## SUPREME COURT.

### THE ROCHESTER CITY BANK and LESTER, agt. SUYDAM and SUYDAM, SAGE & Co. and ELY.

All those preexisting rules of pleading, at common law or in equity, which are not expressly abrogated, and which can properly be made applicable under the new system (the Code), remain in force.

Therefore, the statement of facts in a complaint, should be in conformity with the nature of the action. If the case and the relief sought be of an equitable nature, the rules of chancery pleading are to be applied—otherwise those of the common law.

*Monroe Special Term, January,* 1851. The plaintiffs, the Rochester City Bank and Ralph Lester, a banker in Rochester, in the summer of 1850, severally discounted bills drawn upon, and subsequently accepted by the defendants, Suydam, Sage & Co. and endorsed by the defendant Ely, to the amount in the aggregate of $68,440.

Suydam, Sage and Co., the acceptors, having failed before the maturity of the bills, they were all protested and returned to the plaintiffs unpaid. At the time of the discounting of the bills, Ely had in his hands and under his control, a large amount of property belonging to the acceptors, consisting of real estate, securities, &c. upon all of which he claimed a lien by special agreement as an indemnity against his endorsements.

This property is now claimed by the defendant Ferdinand Suydam, partly by virtue of an assignment from Suydam, Sage & Co. after their failure, and partly as original proprietor.

The suit was brought to reach the securities in Ely's hands, and to be subrogated to his rights in respect to them, and the plaintiffs aver that they discounted the bills upon the faith and credit of these securities, and of Ely's lien thereon.

The complaint not only avers the existence of the lien, but also contains a description of the various items of property upon which it is claimed to rest, and sets out with much minuteness of detail, the transactions between Ely and the firm of Suydam, Sage & Co., including extracts from their correspondence, for the purpose

The Rochester City Bank and Lester, agt. Suydam and others.

among other things, of showing that the lien extended to the property described in the complaint.

The defendants Ferdinand Suydam, and Suydam, Sage & Co. move to strike out a large portion of the complaint, upon the ground that the plaintiffs should have confined themselves to a statement of those general facts which are essential to their claim to relief, and had no right to insert in their complaint, any portion of the evidence upon which they relied to establish such essential facts, nor any of the minor details of the case; in other words, upon the ground that the common law rule of pleading, which required the party at all times to state facts, and not the evidence of facts, is applicable under the Code, as well to actions of an equitable nature, as to those which prior to the Code were exclusively of common law cognizance.

A. WORDEN, and S. MATHEWS, *for Plaintiff.*

J. A. VERPLANCK, G. R. J. BOWDOIN, J. L. TALCOTT, *for Defts.*

SELDEN, Justice.—This motion involves to a great extent, the effect of our recent changes in the system of pleading in civil actions.

The magnitude of those changes, and the diversity of opinion that prevails in regard to them, can not fail to produce a sense of weighty responsibility, in those who are called upon to act judicially upon the subject, and I regret that the duty of passing upon this question has not devolved upon others.

It is obvious that the rule contended for by the defendants here, would if adopted, introduce the most sweeping changes into the forms and mode of pleading in all that class of actions heretofore denominated equitable. Prior to the Code, this was purely a common law rule, and had no application whatever to pleadings in the Court of Chancery. Evidence consists of facts; and to state matters of evidence is of course to state facts. A rule, therefore, requiring facts to be pleaded, instead of the evidence of facts, is utterly unmeaning unless a limited signification is given to the term facts. The true interpretation of the rule was this: That in a common law pleading, no averment of any fact

28

should be made, which was not so indispensable that to strike it out would destroy the cause of action or defence; and that in making such averments the main facts should be directly stated, and not by way of inference from other facts. It is only in this connection that the rule in question can have any meaning.

But did the system of chancery pleading contain any such rule? was nothing to be inserted in a bill in equity, with a view to obtaining, through the admissions of the other party, evidence to support the case, nor any facts or circumstances, for the purpose of strengthening and giving color and body to the equity claimed? Every one who ever entered the doors of a Court of Chancery knows the contrary.

But it is said that the legislature by abolishing the distinction between the different forms of action, have manifested an intention to mould the two systems of pleading into one, and to have hereafter but one set of rules for all actions.

Undoubtedly it was the intention of the legislature, to simplify and render less complex the modes of judicial proceeding. But this simplicity in regard to actions has been attained at a considerable sacrifice. Classification, arrangement, is a vital principle in every science; and especially in that of the law, which consists of such a multitude of abstract rules, is it indispensable to its clear comprehension and just application. That important branch of the common law which relates to civil remedies, has from the origin of the science been arranged under heads corresponding with the divisions of actions. Under this arrangement, books have been written, indexes and digests compiled, and the legal knowledge of every lawyer is stored in his memory in the same order. He can not search for a principle either in his books, or in his own mind, without having this division in view.

If this arrangement were to be effectually broken up, it requires but little knowledge of science or philosophy to appreciate the consequences. What was order would for a time at least, have become confusion; and the work of reconstruction and rearrangement, would have to be immediately commenced. But happily we have no consequences quite so serious to apprehend.

The Rochester City Bank and Lester agt. Suydam and others.

The common law division of actions with all its evils, was founded in one respect in the most just principles of science. It followed the real distinction in actions, and the names adopted were in general descriptive of the nature of the action. The same differences still exist. The legislature was too wise to attempt to abolish them, or to enact that an action to recover possession of real estate, should be held to be the same thing as an action upon a promissory note, or an action upon a bond as one for an assault and battery. It has been guilty of no such absurdity; but has simply provided that they shall all be called by the general name of civil actions, leaving the specific differences between them to be defined by appropriate phraseology.

It may be thought that these remarks are foreign to the question to be decided; but my object is to show, that as the legislature in giving a statutory name to all actions, has left untouched those natural distinctions which exist between them, nothing is to be inferred from this particular enactment in respect to the modes of pleading designed to be adopted; but that all those preexisting rules which are not expressly abrogated, and which can properly be made applicable under the new system remain in force.

It is clear also, that the section of the Code which requires every complaint to state the *facts* constituting the cause of action, is not at all decisive of this question. Whether a complaint is drawn in the condensed form required by the rules of the common law, or with all the elaborate detail which the practice of the Courts of Chancery warranted, it equally states facts, and equally complies with the provisions of this section.

There is but one way of properly determining the point we are considering, and that is to look into the reasons which led to the adoption of different modes of stating facts in the courts of equity and common law, and to see whether the constitutional blending of the two jurisdictions in one court, and the various statutory provisions bearing upon the subject have removed these reasons; for if they have, then the principles of science and of law, which are opposed to keeping up a distinction where no

reason for a difference exists, would require that the same rules should be applied to all actions.

It is not difficult to trace the causes which led to the adoption of those strict and logical rules constituting the common law system of pleading, which compelled the parties to eliminate from the issue to be tried every thing not strictly essential to the ultimate right.

They were, first, the reference of questions of law and of fact to different tribunals; and secondly, the almost absolute necessity of having those issues which were to be presented to a jury, single and decisive of the right.

Trial by jury therefore, lies at the foundation of the reasons upon which the common law system of pleading was constructed, and while that is preserved those reasons must ever continue with unabated force.

To the same cause are we indebted for the precision and certainty of the common law itself. The court could only look at the record in pronouncing its judgment; no minor circumstances were admitted to modify the rule. Hence trial by jury, and the system of pleading which was its natural consequence, annihilated the discretion of the judge, and with it his power to pervert justice. But it had other consequences. Cases would sometimes occur, in which the injustice arising from the application of the inflexible rules of the common law, was so manifest, that the universal sense of equity and right, demanded that a power should exist somewhere of relaxing those rules. This led by a gradual process to the establishment of the Court of Chancery.

The trial of questions of fact by a jury, therefore, gave rise to this court, with the jurisdiction conferred upon or assumed by it. Without this cause the Court of Chancery, as a separate court, would never have existed.

As therefore the common law system of pleading, with its causes and consequences, created the necessity for the Court of Chancery, we should naturally expect the adoption of a different system in that court.

It seems however to have been supposed, not only by the

The Rochester City Bank and Lester, agt. Suydam and others.

counsel who argued this motion for the defendants, but by some eminent writers on the subject, that the only reason for a more minute and detailed statement of facts in a bill in chancery than in a declaration at law, was to obtain a discovery from the defendant. These authors say, that such a bill partook of two natures, first that of a pleading, and secondly, that of a written examination of the defendant; and they seem to have inferred that as a pleading merely, it would be subject to the same rules as at common law.

Hence it is argued, that inasmuch as it is provided by the Code, that the opposite party may in all cases be examined as a witness, there is now no reason for continuing this double and complex species of pleading in an equity case; and I confess that if the difference in the two modes of pleading rested upon no other reason than that referred to, the argument would seem to me almost irresistible.

But the glance we have given at the origin of the court, goes to prove that there are other reasons.

It would be easy to show from the history of the court, that a discovery was not the object for which its earliest jurisdiction was assumed. This application of its powers, followed the introduction of civil law pleadings, which embraced in addition to the libel or statement of the plaintiff's case, an examination of the defendant upon written interrogatories, not so much as it would seem for the purpose of searching the conscience of the defendant, as of saving the expense and trouble of taking the depositions of witnesses to facts about which there was no dispute.

An argument of much force might be drawn from the convenience of this process, in cases where the facts and the law are both to be passed upon by this court. But without dwelling upon any minor reasons, I will come at once to one which if our previous reasoning is correct must be seen to be conclusive.

The kind of relief afforded by a court of equity, imperatively required a different mode of stating the case from that adopted in the common law courts.

The decree in chancery with all its varied provisions, its con-

ditions, and limitations, could not be engrafted upon the record of a common law action. The two were incompatible. From the one, was carefully excluded every fact not essential to enable the court to determine *for which party* to give judgment. The other required a consideration of all the circumstances bearing upon the nature of the judgment, and going to *modify* or *vary* its provisions.

But why, it may be asked, should not these circumstances be left to the proofs as at common law? For one reason, if no other, the facts stated in the bill or complaint might be admitted by the answer. There being then no issue, no proofs could be taken. The court might be able to see that the plaintiff was entitled to some relief, without having the means of determining precisely what it should be. At common law a writ of inquiry would issue, and the damages be assessed by a jury; but in the chancery system, no resource was provided for such a case.

There is, however another reason. If the plaintiff was allowed to vary his case by his proofs, his relief might be grounded in whole or in part upon facts of which the defendant had had no previous notice. The maxim that the relief must be according to the allegations, as well as the proofs, was founded in the plainest principles of justice. The books are full of cases which hold that every material circumstance going to modify the decree must be stated in the bill.

It is apparent, therefore, that the civil and the common law systems of pleading, were adapted each to its own peculiar modes of trial and relief; and that a blow at either, is a blow at the system of jurisprudence of which it is a part.

So long as jurisdiction in equity and at law are kept distinct, and courts of justice are permitted to adapt the relief they afford, to the facts and circumstances in one class of cases, while they are confined to a simple judgment for or against the plaintiff in all others, so long must different rules be applied to pleadings at law and in equity.

To do this, is not inconsistent with the provisions of the Code which does not attempt to abolish the distinction between law

Munson and Suiter agt. Hagerman and Hagerman.

and equity, even if the legislature had the power to do so under the constitution. (*See Const. Art.* 6, § 3 *and* 5.)

My conclusion therefore is, that the statement of facts in a complaint, should be in conformity with the nature of the action. If the case and the relief sought be of an equitable nature, then the rules of chancery pleading are to be applied; otherwise those of the common law.

In the present case, the facts are stated with much circumstantial detail, but I am unable to say that they should be stricken out as irrelevant, or redundant, under the established rules heretofore applied to equity pleadings, and I am of the opinion that they ought not to be stricken out as embracing matters of evidence merely, for the reason that the convenience of a court of equity is promoted by having as many of the circumstances appear in the pleadings, and as few in the proofs as possible, and for the other reasons already given.

The motion must be denied, but without costs for opposing, which I am not in the habit of allowing upon motions involving unsettled questions of practice under the Code.